

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-19-2008

# Brown v. Dept Corr PA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4194

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Brown v. Dept Corr PA" (2008). *2008 Decisions.* Paper 1579.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1579

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

DLD-109                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-4194

SELWYN BROWN,
                                        Appellant

v.

D.O.C. PA; J. BEARD; D. WILLIAMSON; S. BURKS; A.W. RUSS; E. KLEM; K.G.
CHMIELEWSKI; T. HORNUNG; J. CORBACIO; R. NOVOTNEY; P. RAMER; CAPT.
V. MOONEY; CAPT. CLARK; LT. G; L. FLINO; T.D. JACKSON; M. BRUNO; CAPT.
MUCCINO; LT. HAYWOOD; LT. MEIGHEN; SGT. MITCHELL

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. Civil No. 05-cv-00347)
District Judge:  Honorable David S. Cercone

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
January 25, 2008

Before: BARRY, CHAGARES and COWEN, Circuit Judges

(Opinion filed February 19, 2008)

OPINION

PER CURIAM

Selwyn Brown, a Pennsylvania prisoner proceeding pro se, appeals an order of the United States District Court for the Western District of Pennsylvania granting summary judgment for prison employees in his civil rights action. We will summarily affirm.

Brown alleged in his amended complaint that he was placed in solitary confinement to punish him for his belief in, and for teaching the tenets of, the Nation of Gods and Earths, also known as the Five Percenters. Brown claimed that his confinement violates his First Amendment rights, his rights to due process and equal protection, and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc et seq. ("RLUIPA"). Brown further alleged that his religious mail was taken in violation of the First Amendment and his right to equal protection. He also claimed that prison employees conspired to violate his constitutional rights.

The record reflects that Brown was placed in administrative custody at SCI-Mahanoy on October 27, 2003, pending a Security Office investigation into information that he was involved in the assault of another inmate. After a hearing, the Program Review Committee decided to continue Brown's administrative custody because he was a threat to himself, others, or the safety and security of the institution. In December 2003, Brown pleaded guilty to two charges of unauthorized use of the prison mail, and he was confined in disciplinary custody for 150 days. Brown returned to administrative custody in May 2004. The Program Review Committee advised Brown that he would stay in administrative custody pending a transfer to another institution. The Program Review

2

Committee's notes reflect that the decision was based on a finding that Brown ordered assaults on two inmates, and that Brown would be "separation transferred" to avoid future problems.

Brown was transferred to SCI-Greene on May 18, 2004, and placed in administrative custody. The Superintendent denied Brown's appeal of the Program Review Committee's decision to continue administrative custody. The Superintendent explained that Brown's transfer did not change his custody status, and that he was appropriately housed based on his assigned custody level and the determination that he is a danger to himself or others. Brown then spent 20 days in disciplinary custody for possessing a magazine in violation of prison rules. On June 23, 2004, he was placed back in administrative custody. Since that time, the Program Review Committee has voted to continue Brown's placement in administrative custody. Brown has refused to attend his reviews before the Program Review Committee.

John Kingston, the Security Intelligence Captain at SCI-Greene, attested that Brown is being held in administrative custody "due to his undisputed core membership in the Five Per Cent Nation of Islam (NOI), in which his actions in regards to a position of Leadership within this organization have resulted in violence directed toward other Inmates[.]" Kingston Aff. at 2.[1] Kingston explained that Brown has been formally

---

[1] According to Kingston, the Five Per Cent Nation has not been designated a Security Threat Group in the Pennsylvania prison system due to the small number of members. The Five Percenters have been designated a Security Threat Group in the New Jersey and South Carolina prison systems. See Fraise v. Terhune, 283 F.3d 506 (3d Cir. 2002).

separated from intended victims and other Five Percenters, including the June 2004 separation based on his order directing inmate assaults, and court-ordered separations from other inmates and staff in February 2005 and January 2006. Kingston stated that administrative custody prevents the group from functioning in an organized fashion, deters recruitment, and prevents prison violence.

John Moyer, a Security Lieutenant at SCI-Graterford, attested that, while on parole, Brown led his street gang to burglarize a home and rape the occupant, resulting in his return to SCI-Graterford. Moyer's predecessor determined that Brown was planning to escape in 2001. Moyer authenticated taped telephone conversations at several of Brown's co-defendants' trials on charges related to the escape attempt. Moyer stated that the Five Percenters are a security threat group, and that Brown is a major player.

Brown asserted that he is not a gang leader, but a sincere adherent to the Five Percenters' teachings. Brown provided publications about the group, reflecting its history, beliefs, and community involvement outside of prison. Brown stated that he was sentenced to three to ten years in prison in the early 1990's, and ten to twenty years in prison in 2002, and that he was confined in the general population at a low security level. Brown asserted that he was suddenly placed in administrative custody without evidence of a security threat. He denied ordering inmate assaults. Brown also provided the affidavits of the two inmates he purportedly ordered to assault others. These inmates attested that Brown did not order any assaults, and that the altercations that they were involved in were of a personal nature. Brown noted that most Five Percenter inmates

4

participate in educational, vocational, and rehabilitative prison programs, and that they have not caused any major disturbances in the Pennsylvania prison system.

We agree with the District Court that summary judgment is warranted on Brown's First Amendment claims. There is insufficient evidence supporting Brown's contention that he was placed in administrative custody and continues to be held there based on, or in retaliation for, his religious beliefs. The record establishes that Brown was confined in administrative custody because of his potential involvement in an inmate assault, that he was then placed in disciplinary custody for breaking prison rules, and that he returned to administrative custody because he ordered inmate assaults and was a threat to others. Although Brown produced inmate affidavits disputing that he ordered the assaults, he did not produce sufficient evidence from which a jury could conclude that his religious beliefs were a substantial motivating factor in the decision to confine him in administrative custody. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (discussing elements of a retaliation claim).[2]

Brown's First Amendment rights also were not violated by the alleged taking of his Five Percenter newspapers. Kingston attested that the newspaper, which includes

---

[2] Brown did assert that a week after he was placed in administrative custody defendant Mooney said to him, "I've been waiting to find a reason to lock your black a[][] down. Your [sic] not going to teach that 5% sh[]t in this prison. Your [sic] going to be in the hole so long you are going to need a court order to be released." Amended Compl. at 2. We agree with the Magistrate Judge that this statement is insufficient to create an issue of fact for trial because there is no evidence that Mooney played any role in the decisions to place Brown in administrative custody or continue his confinement there.

5

articles with revolutionary and anti-government messages, and inmate submissions allowing inmates to communicate with one another, is reviewed and approved before it is distributed. Brown's complaint is based on an incident in August 2004 when Sergeant Mitchell allegedly confiscated some newspapers. Brown, however, states that he is receiving the newspaper, and he does not contend that Mitchell's taking of the newspapers affected his ability to study the Five Percenters' teachings. See Fraise v. Terhune, 283 F.3d 506, 519 (3d Cir. 2002) (upholding a ban on Five Percenter newspapers where inmates could possess, study, and discuss the Bible and the Koran).

We also agree with the District Court that Brown's procedural due process rights were not violated. Even if the length of time Brown has spent in administrative custody implicates a liberty interest, Brown received notices regarding his confinement, had a hearing, and received regular reviews by the Program Review Committee. See Shoats v. Horn, 213 F.3d 140, 145-46 (3d Cir. 2000) (holding confinement in administrative custody for eight years did not violate procedural due process where Program Review Committee conducted reviews in accordance with prison procedures).

Summary judgment also is warranted on Brown's claim under the RLUIPA, which prohibits the government from imposing a substantial burden on a prisoner's religious exercise, even if the burden results from a rule of general applicability, unless the government shows that the burden is in furtherance of a compelling government interest and is the least restrictive means of furthering that interest. Washington v. Klem, 497 F.3d 272, 277 (3d Cir. 2007). To establish a violation of the RLUIPA, Brown had to

show that he was forced to choose between following the precepts of his religion and forfeiting benefits otherwise available, or that the government put substantial pressure on him to substantially modify his behavior and to violate his beliefs.  Id. at 279.  Brown did not make such a showing.  Brown's confinement in administrative custody is based on the determination that he is a threat to others.

Brown did not allege in his complaint or argue in response to the defendants' summary judgment motion that his confinement constitutes a substantial burden on his religious exercise because he is unable to practice the tenets of his religion.  Rather, his RLUIPA claim is based on the decision to confine him in administrative custody.  Brown did aver for the first time in response to the defendants' supplemental brief addressing Washington v. Klem, 497 F.3d 272 (3d Cir. 2007), that he is unable to practice certain tenets of his religion, but he provided no evidence in support of his claim.  We conclude that these allegations are too little, too late.[3]

Finally, there is no evidence supporting Brown's equal protection or conspiracy claims.[4]

---

[3]  Because we conclude that Brown did not pursue a claim that administrative custody precludes him from practicing his religious beliefs, we do not consider whether Brown's confinement satisfied the test articulated in Turner v. Safley, 428 U.S. 78 (1987), to determine the validity of regulations that impinge on prisoners' constitutional rights.  We also find it unnecessary to reach the questions whether individuals may be liable for monetary damages under the RLUIPA and whether qualified immunity applies here.

[4]  Although the Magistrate Judge addressed a substantive due process claim based on Brown's administrative custody and a procedural due process claim based on the taking of his newspapers, we conclude that Brown did not advance such claims.

Accordingly, because this appeal does not raise a substantial question, we will summarily affirm the District Court's order.